CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
August 20, 2024
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | |
|---|---|
| **IRON HORSE TRANSPORT, LLC d/b/a DPF ALTERNATIVES OF ROANOKE,** ) ) ) ) **Plaintiff,** ) ) ) **v.** ) ) **DET DIESEL EMISSION TECHNOLOGIES, LLC, et al.,** ) ) ) ) **Defendants.** ) | Case No. 7:23-cv-791 <br><br> By:    Michael F. Urbanski <br> Senior United States District Judge |

## MEMORANDUM OPINION

This matter comes before the court on a motion to dismiss or transfer, ECF No. 51, filed by defendants DET Diesel Emission Technologies, LLC ("DET") and Synergy Catalyst, LLC ("Synergy"). Plaintiff Iron Horse Transport, LLC d/b/a DPF Alternatives of Roanoke ("Iron Horse") filed its Amended Complaint seeking relief related to DET and Synergy's alleged misrepresentations that they possessed a patent on certain diesel technology processes. DET and Synergy argue that a mandatory forum-selection clause applies to this dispute and requires transfer of this case to the Dallas Division of the United States District Court for the Northern District of Texas.

The court held arguments on a motion to dismiss or transfer the Initial Complaint, ECF No. 14, on May 23, 2024. During the hearing, the court granted Iron Horse's motion for leave to file an amended complaint, which Iron Horse then filed on May 30, 2024, see Am.

1

Compl., ECF No. 50.[1] Defendants subsequently filed a renewed motion to dismiss or transfer. ECF No. 51. The motion is fully briefed, and the court dispenses with oral argument because the issues were sufficiently addressed at the May 23, 2024, hearing, and in the parties' subsequent briefing.

## I. Background

Iron Horse is a franchisee of DPF Alternatives, LLC, "a nationwide franchise that specializes in providing diesel particulate filter (DPF) services to the diesel industry." Am. Compl., ECF No. 50, ¶ 20. A DPF removes "diesel particulate matter or soot from the exhaust gas of a diesel engine." Id. ¶ 21. DPF Alternatives "is well known in the industry for its ultrasonic diesel particulate filter cleaning process and warranty services of DPFs." Id. ¶ 26. In July 2021, a representative of DET and Synergy, which operate collectively under the trade name "Recore," contacted Iron Horse with an offer to sell "equipment and services . . . that [the representative] claimed was patented technology." Id. ¶ 33. This technology "could remove the core of the DPF, allowing for repair or replacement of the DPF." Id. ¶ 35. Recore representatives informed Iron Horse that Recore had patented this technology and that, if Iron Horse did not purchase Recore's products and services, Iron Horse would not have access to the technology. Id. ¶ 38.

On August 15, 2021,[2] Iron Horse entered into a Master Services Agreement ("MSA") with DET, in which Iron Horse agreed "to 'rent' Recore equipment from an authorized 'Third Party Owner approved by DET,' whereby [DET and Synergy] would sell the Recore

---

[1] As Iron Horse has now filed the Amended Complaint, Defendants' motion to dismiss the Initial Complaint, ECF No. 14, is **DENIED** as moot.
[2] Iron Horse alleges that the parties entered the MSA in 2022, see Am. Compl., ECF No. 50, ¶ 50, but the MSA itself identifies its effective date as August 15, 2021. See Master Services Agreement, ECF No. 51-1, at 1.

equipment to the Third-Party Owner, who then would rent the Recore equipment to Iron Horse."³ Id. ¶ 52. The terms of the MSA governed Iron Horse's use and marketing of the Recore equipment. Id. ¶¶ 53–59. The MSA also contains the following choice-of-law and forum-selection clause:

> Governing Law; Venue. This Agreement shall be construed and enforced in accordance with and governed by the laws of the State of Texas, without regard to its conflicts of laws principles. Exclusive venue for any proceeding related to this Agreement shall lie with the state and federal courts located in Dallas County, Texas.

Master Services Agreement, ECF No. 51-1, ¶ 27.

After signing the MSA, "Iron Horse learned that Defendants did not have any issued patents, let alone a patent that covered the Recore equipment and processes." Am. Compl., ECF No. 50, ¶ 68. DET and Synergy became unresponsive to Iron Horse's technical and sales-related questions, and refused to terminate the MSA. Id. ¶¶ 71–74. Iron Horse alleges that DET and Synergy's conduct "greatly reduce[d] Iron Horse's ability to generate the revenue needed to sustain their Recore business." Id. ¶ 78.

In a January 19, 2024, letter, DET informed Iron Horse that it had breached four provisions of the MSA and demanded that Iron Horse cure these breaches within 30 days. Id. ¶¶ 89–92. Iron Horse denied that it had breached the MSA, and on April 19, 2024, DET

---

³ The court will consider the MSA because it is integral to the Complaint. The court may rely on "pertinent documents that a plaintiff fails to attach to the complaint if a defendant has attached them to a motion to dismiss, especially if a plaintiff has referred to the document in the complaint . . . without converting the motion to dismiss into a motion for summary judgment." Hoffman v. Daimler Trucks N. Am., LLC, 940 F. Supp. 2d 347, 354 (W.D. Va. 2013) (first citing Davis v. George Mason Univ., 395 F. Supp. 2d 331, 335 (E.D. Va. 2005), aff'd, 193 F. App'x 248 (4th Cir. 2006); and then citing 5A Charles A. Wright & Arthur P. Miller, Federal Practice and Procedure § 1327 (3d ed. 2012)).

3

terminated the MSA. Id. ¶¶ 95–97. Iron Horse subsequently filed this lawsuit alleging, as amended, the following seven claims for relief:

> Count One: False marking under 35 U.S.C. § 292.
> Count Two: False descriptions under 15 U.S.C. § 1125.
> Count Three: Monopolization of trade under 15 U.S.C. § 2.
> Count Four: Breach of contract.
> Count Five: Fraud in the inducement.
> Count Six: Tortious interference with contract.
> Count Seven: Unlawful cancellation of franchise under Va. Code § 13.1-564.

Am. Compl., ECF No. 50, ¶¶ 107–169.[4]

During the pendency of this action, Iron Horse and several other entities that had entered into similar agreements with DET sought the creation of a multidistrict litigation ("MDL") against DET for substantially the same injuries as alleged here. On April 11, 2024, the Judicial Panel on Multidistrict Litigation denied centralization because the cases "are, at bottom, fairly straight-forward contract and misrepresentation actions." In re Recore Antitrust Litig., MDL No. 3106, 2024 WL 1596924, at *1 (J.P.M.L. Apr. 11, 2024). Noting that there were only five individual actions based on these alleged wrongdoings, and that each action was brought by the same counsel, the Panel reasoned that the parties could informally coordinate across districts without much difficulty. Id. at *2. Additionally, the Panel observed that the MSA in this case contained a forum-selection clause, which, if enforced, would "reduce the number of involved districts."[5] Id.

---

[4] Iron Horse does not identify which state's law governs its claims for breach of contract, fraud in the inducement, and tortious interference with contract. See Am. Compl., ECF No. 50, ¶¶ 132–160.

[5] Like this case, DET and Synergy have asked courts in several of these related cases for transfer to the Dallas Division of the Northern District of Texas pursuant to 28 U.S.C. § 1404(a). Three courts have already transferred their cases to the Dallas Division of the Northern District of Texas, see DPF Alts., LLC v. DET Diesel Emission Techs., LLC, No. 1:23-cv-2860 (D. Colo. entered July 29, 2024); RTR DPC, LLC v. DET Diesel Emission Techs., LLC, No. 4:24-cv-030 (N.D. Tex. entered June 5, 2024); DPF Alts. of Tex., LLC v.

4

## II. Legal Standard

Though defendants style their motion as one to dismiss or transfer, they primarily argue that this case should be transferred to the Dallas Division of the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a) and the MSA's forum-selection clause. See Renewed Mot. to Dismiss or Transfer Venue, ECF No. 51, at 1–2. A case may be transferred to another district under 28 U.S.C. § 1404(a). Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex., 571 U.S. 49, 59 (2013). Section 1404(a) states that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "Decisions whether to transfer a case pursuant to 28 U.S.C. § 1404 are committed to the discretion of the transferring judge." Brock v. Entre Comput. Ctrs., Inc., 933 F.2d 1253, 1257 (4th Cir. 1991). In deciding whether to transfer venue, the traditional § 1404(a) framework requires the court to consider "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 444 (4th Cir. 2015).

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" Atl. Marine, 571 U.S. at 62 (quoting Stewart Org. v. Ricoh Corp., 487 U.S. 22, 31

---

DET Diesel Emission Techs., LLC, No. 1:24-cv-288 (W.D. Tex. entered Aug. 5, 2024), and a motion to transfer remains pending in one other related case, see JGD Filters, LLC v. DET Diesel Emission Techs., LLC, No. 4:24-cv-061 (S.D. Tex.).

(1988)). A "valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases" because their enforcement protects the parties' "legitimate expectations and furthers vital interests of the justice system." Id. (quoting Stewart, 487 U.S. at 33 (Kennedy, J., concurring)). In Atlantic Marine, the Supreme Court explained that the "presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." Id. First, "the plaintiff's choice of forum merits no weight," second, the court "should not consider arguments about the parties' private interests," and third, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." Id. at 63–64. Put simply, in the presence of a forum-selection clause, courts should generally weigh in favor of transfer. Brock, 933 F.2d at 1257 (stating that forum-selection clauses must be given "'controlling weight in all but the most exceptional cases'") (quoting Stewart, 487 U.S. at 33); see also Albemarle Corp. v. AstraZeneca UK Ltd., 628 F.3d 643, 649 (4th Cir. 2010) ("[A]s a general matter federal common law directs courts to favor enforcement of the agreement, so long as it is not unreasonable.").

### III. Discussion

Iron Horse does not question the validity of the MSA's forum-selection clause.[6] Instead, Iron Horse argues that only its breach of contract claim is subject to transfer pursuant

---

[6] Further, there is no suggestion that the forum-selection clause in the MSA merely permits transfer—the clause states that "exclusive venue for any proceeding related to this Agreement shall lie with the state and federal courts located in Dallas County, Texas." MSA, ECF No. 51-1, ¶ 27 (emphasis added). If the clause is enforceable, then "[t]his 'specific language of exclusion' confers mandatory jurisdiction" in the state and federal courts located in Dallas County, Texas. Whitaker v. Monroe Staffing Servs., LLC, 43 F.4th 200, 210 n.7 (4th Cir. 2022) (quoting BAE Sys. Tech. Sol. & Servs., 884 F.3d at 472); see also Melo v. Zumper, 439 F. Supp. 3d

6

to the forum-selection clause and that the public-interest factors require that this case remain in Virginia courts. The court will address each argument in turn.

### A. Scope of Forum-Selection Clause

Iron Horse contends that, if enforceable, the forum-selection clause in the MSA applies only to its breach of contract claim.[7] But Iron Horse's pleading demonstrates that each of the claims is sufficiently related to the MSA such that the forum-selection clause governs the entire action. In a related action, the court transferred the case from the Western District of Texas to the Northern District of Texas despite a similar argument from the plaintiff there. See Order, ECF No. 17, DPF Alts. of Tex., LLC v. DET Diesel Emission Techs., LLC, No. 1:24-cv-288 (entered Aug. 5, 2024). The court dismissed the plaintiff's argument that not all of its claims were subject to the forum-selection clause:

> Plaintiff repeatedly emphasizes that because it brings only federal statutory claims, its complaint is not related to the MSA. (See Resp., Dkt. 14). However, the Fifth Circuit discourages a strict adherence to examining a plaintiff's stated cause of action. Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte, 536 F.3d 439, 444–45 (5th Cir. 2008). Instead, the Fifth Circuit instructs that courts should employ a "common-sense view of the causes of actions to determine whether" the forum-selection clause covers a plaintiff's claims. Id. Here, a common-sense view of Plaintiff's claims would find that they are related to the MSA, even if they do not sound in contract law. See KeyCity Capital, LLC v. Davenport Inv., LLC, No. 3:21-CV-2046-D, 2022 WL 581146, at *7 n.16 (N.D. Tex. Feb. 25, 2022) (noting that artful pleading of causes of action should not defeat common-sense application of forum-selection clause).

---

683, 700 (E.D. Va. 2020) (discussing the distinction between mandatory and permissive forum-selection clauses).

[7] Iron Horse raised this argument in opposition to defendants' motion to dismiss the Initial Complaint and did not address it again in response to the renewed motion to dismiss. But the argument is equally applicable to this motion, so the court will address it.

> Further emphasizing this point, Plaintiff's complaint implicitly references the MSA several times. Plaintiff states it "agreed to purchase Defendants' Recore products and services" beginning in August 2022. (Id. at 6). That agreement is the MSA. (See id.; Reply, Dkt. 15, at 2). Plaintiff uses similar language again: "After agreeing to purchase Defendants' equipment, [Plaintiff] learned that Defendants did not have any issued patents" and "the purchased press and equipment was worth less than 10% than the purchase price of the equipment, the greatly inflated value of the equipment directly attributed to Defendants' claim of patent protection for the equipment." (Id.). Plaintiff's own repeated references to the MSA constitute strong evidence that its claims are related to the MSA.

Id. at 5.

Similarly, Iron Horse relies upon the MSA throughout the Amended Complaint. See Am. Compl., ECF No. 50, ¶¶ 50–67, 89–106, 132–146, 161–169. And the forum-selection clause applies to "any proceeding relating to" the MSA. Master Services Agreement, ECF No. 51-1, ¶ 27. The court finds that each of Iron Horse's claims relates to the MSA such that the forum-selection clause can be validly applied to this entire action.

### B. Public Interest Considerations

Iron Horse contends that transfer from this court to the Northern District of Texas would violate Virginia's strong public policy in favor of the protection of franchisees as set forth in the Virginia Retail Franchising Act ("VRFA"). Va. Code Ann. §§ 13.1-557–13.1-574.

In the presence of a forum-selection clause, only public-interest factors—not the private interests of the litigants—can prevent transfer to the parties' predetermined litigation venue. Atl. Marine, 571 U.S. at 67–68. The facts of Atlantic Marine are instructive in this case. Atlantic Marine, a construction company incorporated in Virginia with its principal place of business in Virginia contracted with the United States Army Corps of Engineers to construct

a child-development center at Fort Hood, located in the Western District of Texas. 571 U.S. at 52–53. Atlantic Marine then subcontracted with J-Crew Management, Inc., a Texas corporation, for work on the project. Id. at 53. The contract between Atlantic Marine and J-Crew included a forum-selection clause that identified the exclusive forum for any disputes between the parties as the Circuit Court for the City of Norfolk, Virginia, or the United States District Court for the Eastern District of Virginia, Norfolk Division. Id. As the Court recounted, "[w]hen a dispute about payment under the subcontract arose, however, J-Crew sued Atlantic Marine in the Western District of Texas." Id. Atlantic Marine filed a motion to dismiss or transfer the case to the Eastern District of Virginia under § 1404(a) in light of the subcontract's forum-selection clause. Id.

The Court explained that the parties' private interests had no impact on the § 1404(a) analysis because they had agreed to litigate their disputes in Virginia. Id. at 67–68. The Court recognized J-Crew's interests in having the case remain in Texas, but explained that "when J-Crew entered into a contract to litigate all disputes in Virginia, it knew that a distant forum might hinder its ability to call certain witnesses and might impose other burdens on its litigation efforts." Id. at 67. Although the Court disregarded J-Crew's "claims of inconvenience," id., the Court acknowledged that certain public interest factors could outweigh the impact of a valid forum-selection clause in limited circumstances. See id. at 68 (remanding for the lower courts to decide whether public-interest factors weighed against transfer).

Though courts may consider public-interest factors, they will "rarely defeat a transfer motion." Id. at 64. These factors include:

9

> [T]he administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981); see also Atl. Marine, 571 U.S. at 62 n.6 (citing Piper Aircraft public interest factors as relevant in the § 1404(a) analysis). Judicial economy likewise factors into the public-interest factors. See WCC Cable, Inc. v. G4S Tech. LLC, No. 5:17-cv-052, 2017 WL 6503142, at *15 (W.D. Va. Dec. 15, 2017) (citing In re Howmedica Osteonics Corp. (Howmedica II), 867 F.3d 390, 402 n.7 (3d Cir. 2017)).

Iron Horse objects to transfer on the basis that doing so would cut against Virginia's public interest in protecting franchisees. Specifically, Iron Horse points to Va. Code § 13.1-558, which establishes the following public policy of Virginia:

> It is hereby declared to be the policy of the Commonwealth . . . to correct as rapidly as practicable such inequities as may exist in the franchise system so as to establish a more even balance of power between franchisors and franchisees; to require franchisors to deal fairly with their franchisees with reference to all aspects of the franchise relationship and to provide franchisees more direct, simple, and complete judicial relief against franchisors who fail to deal in a lawful manner with them.

Va. Code Ann. § 13.1-558. Iron Horse argues that, through this provision, Virginia has established a policy that disputes involving the VRFA should be litigated in the state and federal courts of Virginia. See Mem. Opp., ECF No. 56, at 5. Defendants concede that § 13.1-558 endorses the protection of franchisees in accordance with the provisions of the VRFA as a public policy of Virginia. See Mot. to Dismiss, ECF No. 51, at 6 ("It is thus

abundantly clear that Virginia wishes to provide wronged franchisees with a civil remedy through the justice system."). But they contend that this policy does not mandate that the remedies provided through the VRFA be litigated in Virginia's state and federal courts.[8] Id. at 6–7.

Enacted in 1972, the VRFA "is designed to equalize the balance of power between franchisors and franchisees and thus is remedial legislation." Crone v. Richmond Newspapers, Inc., 238 Va. 248, 254, 384 S.E.2d 77, 80 (1989 (citing Va. Code Ann. § 13.1-558). Courts ordinarily construe remedial statutes liberally, but the VRFA "contains criminal sanctions applicable to franchisors and is a trade regulation statute in derogation of the common law," so the VRFA "must be construed strictly." Id. (citing Cartwright v. Commonwealth, 223 Va. 368, 372, 288 S.E.2d 491, 493 (1982)). However, "that rule of construction 'does not abrogate the well recognized canon that a statute or ordinance should be read and applied so as to accord with the purpose intended and attain the objects desired if that may be accomplished without doing harm to its language.'" Id. (quoting Cartwright, 223 Va. at 372, 288 S.E.2d at 493).

Both sides claim that the language of § 13.1-558 supports their respective positions. DET and Synergy argue that the language of this section only goes as far as to ensure that franchisees receive "more direct, simple, and complete judicial relief against franchisors who fail to deal in a lawful manner with them," and that to read into this provision a requirement

---

[8] DET and Synergy do not ask this court to dismiss Iron Horse's VRFA claim. Indeed, defendants state that the issue of whether Iron Horse has stated a claim under the VRFA is not ripe for disposition. See Mot. to Dismiss, ECF No. 51, at 10; Defs.' Reply, ECF No. 57, at 1 ("Defendants' Renewed Motion does not seek the dismissal of Plaintiff's claim under the VRFA, or a ruling on whether or not the VRFA applies to the parties' relationship."). They only oppose Iron Horse's contention that its VRFA claim must be adjudicated in the state and federal courts in Virginia.

that VRFA claims be litigated in Virginia would be "to add a requirement to the statute that [the General Assembly] did not actually express." Vaughn, Inc. v. Beck, 262 Va. 673, 678, 554 S.E.2d 88, 91 (2001) (first citing Advanced Marine Enters., Inc. v. PRC Inc., 256 Va. 106, 125, 501 S.E.2d 148, 159 (1998), and then citing Haislip v. S. Heritage Ins. Co., 254 Va. 265, 268, 492 S.E.2d 135, 137 (1997)). In contrast, Iron Horse argues that this statutory language mandates litigation in the state and federal courts of Virginia, and cites to numerous legislative documents in support of its argument. See Mem. Opp., ECF No. 56, at 7–12.

Iron Horse first references a 1972 report entitled "Retail Franchising in Virginia," prepared by the Virginia Advisory Legislative Council to the Governor and General Assembly of Virginia (the "VALC Report").[9] See VALC Report, ECF No. 56-1. The VALC Report sought to address significant problems in the sale of franchises, namely that "franchisees in the Commonwealth have suffered substantial losses where the franchisor, or his representative, has not provided full and complete information regarding the franchisor-franchisee relationship, the details of the contract between franchisor and franchisee, and the prior business experience of the franchisor." Id. at 1. The VALC Report included a draft bill, which would later become the VRFA, "to regulate certain retail franchising operations in Virginia and to provide penalties for violations." Id. at 8.

Iron Horse also cites the proceedings of the United States Senate Subcommittee on Urban and Rural Economic Development of the Select Committee on Small Business in

---

[9] The court may take judicial notice of matters of public record. See Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citing Hall v. Virginia, 385 F.3d 421, 424 (4th Cir. 2004)). The VALC Report was prepared by the Virginia Advisory Legislative Council to the Governor and the General Assembly of Virginia and sent to then-Governor Linwood Holton and the General Assembly on November 24, 1971. See VALC Report, ECF No. 56-1, at 1. Accordingly, the VALC Report is a matter of public record, and the court will consider it.

support of its position.[10] See ECF No. 56-2. In January 1970, the subcommittee held hearings on the impact of franchising on small business, which included testimony about the Virginia General Assembly's consideration of franchisee protection legislation and about the power imbalance between franchisors and franchisees in the absence of regulation. Id. Additionally, Iron Horse cites New York legislation that closely mirrored the VRFA, however that legislation was vetoed by New York's governor.

These materials do not support Iron Horse's contention that VRFA claims should be litigated exclusively in the state and federal courts in Virginia. The VALC Report, the Senate subcommittee proceedings, and the New York legislation each expresses a desire to protect franchisees from predatory franchising practices, but they do not indicate a preference for one forum over another in litigating such protections. Indeed, Iron Horse does not identify, nor has the court located, any language in these filings to support the argument that Iron Horse's VRFA claim should be adjudicated by the state and federal courts of Virginia.

Separately, Iron Horse argues that the remedial structure of the VRFA precludes franchisees from contractually waiving their rights to litigate in Virginia's state and federal courts. The VRFA provides for remedial action by three main actors: the Commonwealth of Virginia, via criminal penalties, see Va. Code Ann. § 13.1-569; Virginia's State Corporation Commission (the "Commission"), via civil penalties, see Va. Code Ann. § 13.1-570; and individual franchisees, via civil actions seeking legal and equitable remedies, see Va. Code Ann. §§ 13.1-571, 13.1-568.

---

[10] Like the VALC Report, the subcommittee report is a matter of public record of which the court will take judicial notice. Philips, 572 F.3d at 180 (citing Hall, 385 F.3d at 424).

13

Iron Horse argues that this remedial structure shows that franchisees must be able to pursue VRFA claims in Virginia's state and federal courts. Specifically, Iron Horse cites Picture Lake Campground, Inc. v. Holiday Inns, Inc. for this contention, but a review of that case shows that it bears little relevance here.[11] 497 F. Supp. 858 (E.D. Va. 1980). In Picture Lake, a franchisee that operated a campground as part of the Trav-L-Park franchise system brought claims under Virginia common law and the VRFA against Holiday Inns, Inc., the franchisor, for allegedly destroying the value of the franchise by discontinuing the development of the campground system. Id. at 860–61. The franchisee argued that the franchisor had breached its fiduciary duties as established in the VRFA, but the court found that the VRFA conferred no such duties on franchisors. Id. at 867–68. The court reviewed the VRFA's remedial scheme, including the policy statement at § 13.1-558 and the opportunities for criminal and civil penalties as well as civil actions, and explained that "[w]ith such a comprehensive and explicit enforcement scheme set forth in the statutes, the [c]ourt is inclined to believe that no additional cause of action for the breach of fiduciary duty in the franchise context can be implied from the policy statement." Id. at 868. The court accordingly dismissed the franchisee's VRFA claim.

It is difficult to see the relevance of Picture Lake to this case. Though the court generally discussed the structure of the VRFA, there was no dispute as to the proper venue for VRFA litigation. Indeed, the court dismissed the VRFA claim as improperly pled. Picture

---

[11] Most of the court's opinion in Picture Lake focused on the standing of a co-plaintiff, which was not a franchisee, to pursue claims against the franchisor. See 497 F. Supp. at 861–66. That discussion has no bearing on this case, even though there remains some question as to whether Iron Horse is a franchisee of DET or Synergy, particularly given the fact that it also is a franchisee of DPF Alternatives, LLC. See Am. Compl., ECF No. 50, ¶ 6.

14

Lake does not support Iron Horse's argument that this case should remain in this court in defiance of the parties' valid forum-selection clause.

Iron Horse's position that the VRFA establishes a strong public policy that its claims proceed only in Virginia's state and federal courts is further undercut by the numerous courts outside of Virginia that have adjudicated VRFA claims. See, e.g., Cottman Transmission Sys., LLC v. Kershner, 536 F. Supp. 2d 543, 551 (E.D. Pa. 2008); Sherman v. Ben & Jerry's Franchising, Inc., No. 1:08-cv-207, 2009 WL 2462539, *8–9 (D. Vt. Aug. 10, 2009); ServiceMaster of Fairfax, Inc. v. ServiceMaster Residential/Com. Servs., L.P., No. 16-02589, 2017 WL 3023342, at *6 (D. Md. July 17, 2017); Fusion Cap. 1, LLC v. JB Brothers, Inc., No. 19-2947, 2020 WL 1854966, at *2 (D. Md. Apr. 13, 2020). In ServiceMaster of Fairfax, Inc., for example, the Maryland federal court enforced a forum-selection clause that required the parties to litigate their disputes, including their VRFA dispute, in Memphis, Tennessee. 2017 WL 3023342, at *1. The court transferred the case to the United States District Court for the Western District of Tennessee, finding the Tennessee court capable of applying Virginia law. Id. at *6. And in Cottman Transmission Systems, LLC, the Pennsylvania federal court refused to dismiss a VRFA claim even though the parties had contractually agreed that Pennsylvania law governed their dispute. 536 F. Supp. 2d at 551. Notably, however, the court did not find that the VRFA claim had to be litigated in Virginia's state and federal courts—the court deemed itself capable of applying Virginia law. Id. These cases demonstrate that courts outside of Virginia have regularly adjudicated claims under the VRFA without transferring them to one of Virginia's state or federal courts.

The VRFA's civil remedies section further undermines Iron Horse's position. Section 13.1-571 allows a franchisee to bring a civil action against its franchisor for violations of the Act. In relevant part, § 13.1-571 provides as follows:

> Any condition, stipulation or provision binding any person to waive compliance with any provision of this chapter or of any rule or order thereunder shall be void; provided, however, that <u>nothing contained herein shall bar the right of a franchisor and franchisee to agree to binding arbitration of disputes consistent with the provisions of this chapter</u>.

Va. Code Ann. § 13.1-571(c) (emphasis added). This endorsement of binding arbitration as a pathway to resolve disputes actionable under the VRFA demonstrates that the General Assembly did not intend for Virginia's state and federal courts to serve as the exclusive forums to adjudicate these claims.

To summarize, the VRFA neither explicitly nor implicitly endorses Virginia's state and federal courts as the exclusive forums for claims brought pursuant to the Act. Moreover, the arbitration clause in § 13.1-571(c) demonstrates that other forums can adjudicate VRFA claims. Finally, the existence of VRFA cases in courts outside Virginia supports the conclusion that the VRFA does not establish a public policy that claims arising from the Act must be litigated in Virginia courts. The court finds that Virginia does not have a public policy in favor of local adjudication of VRFA claims over adjudication of these claims in courts outside Virginia. Accordingly, public interest considerations do not preclude transfer of this action to the Dallas Division of the Northern District of Texas.

## IV. Conclusion

Defendants' motion to transfer is **GRANTED** and this case is hereby **TRANSFERRED** to the Dallas Division of the United States District Court for the Northern District of Texas.

An appropriate order will be entered.

Entered: August 19, 2024

Mike Urbanski
Senior U.S. District Judge
2024.08.19 12:57:56
-04'00'

Michael F. Urbanski
Senior United States District Judge